# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Hua LI** | ) | |
| 42 8th St., Apt. 1203 | ) | |
| Charlestown, MA 02129 | ) | |
| | ) | |
| **Arnav SAWHNEY** | ) | |
| 550 West 45th Street, Apt. 1902 | ) | |
| New York City, NY 10036 | ) | |
| | ) | |
| **Narendran MANIVASAGAM** | ) | |
| 2565 Norwood Road | ) | |
| Bloomfield Hills, MI 48302 | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Alejandro MAYORKAS,** Secretary of the | ) | |
| U.S. Department of Homeland Security**;** | ) | |
| Office of the General Counsel | ) | |
| 2707 Martin Luther King Jr. Ave, SE | ) | **Case No.: 1:23-cv-3492** |
| Washington, D.C. 20528-0485 | ) | |
| | ) | **COMPLAINT FOR WRIT IN THE** |
| | ) | **NATURE OF MANDAMUS** |
| **Ur JADDOU**, Director of the United | ) | |
| States Citizenship and Immigration | ) | |
| Services; Office of the Chief Counsel | ) | |
| 5900 Capital Gateway Drive | ) | |
| Camp Springs, MD 20588 | ) | |
| | ) | |
| **Alissa EMMEL,** Chief, Immigrant Investor | ) | |
| Program Office; | ) | |
| 131 M Street NE | ) | |
| Washington, DC 20529 | ) | |
| | ) | |
| **UNITED STATES CITIZENSHIP AND** | ) | |
| **IMMIGRATION SERVICES;** | ) | |
| Office of the Chief Counsel | ) | |
| 5900 Capital Gateway Drive | ) | |
| Camp Springs, MD 20588 | ) | |
| | ) | |
| Defendants | ) | |

**COMPLAINT FOR WRIT IN THE NATURE OF MANDAMUS**

Plaintiffs, by and through his undersigned attorneys, commence this action against the above-named Defendants, and state as follows:

1.      This action arises from Defendant's failure to adjudicate Plaintiffs Li, Sawhney, and Manivasagam's I-829 petitions for over 2 years and 9 months, 2 years and 11 months, and 2 years and 10 months, respectively.

2.      Plaintiffs invested $500,000.00 each in the hopes of obtaining lawful permanent resident status in the U.S. for themselves and their respective families through the employment based fifth preference category of the Immigration and Nationality Act, INA § 203(b)(5)- otherwise known as the EB-5 visa program.

3.      Defendant USCIS approved Plaintiffs' immigrant visa petitions on the basis of their individual investments, and they became conditional permanent residents. Eventually, Plaintiffs filed I-829 petitions with Defendant USCIS to remove the conditions on their residence. The petitions remain pending to date.

4.      Plaintiffs have suffered harm as a result of the delay, and now seek an order from the Court compelling USCIS to adjudicate their petitions.

<b>PARTIES</b>

**A.      Plaintiffs**

5.      Plaintiff Hua Li (A# 208-483-734) is a citizen of China who invested $500,000.00 for the purposes of acquiring lawful permanent residency. She filed a Form I-829 petition with Defendants on February 8, 2021 (WAC-21-900-51820).

6.      Plaintiff Arnav Sawhney (A# 216-278-507) is a citizen of India who invested $500,000.00 for the purposes of acquiring lawful permanent residency. He filed a Form I-829 petition with Defendants on December 8, 2020 (WAC-21-900-35674)

7.    Plaintiff Narendran Manivasagam (A# 208-432-679) is a citizen of India who invested $500,000.00 for the purposes of acquiring lawful permanent residency. He filed a Form I-829 petition with Defendants on December 22, 2020 (WAC-21-900-38606). He is married and has two children. His spouse is a derivative beneficiary of his I-829.

**B. Defendants**

8.    Defendant, Alejandro Mayorkas, is the Secretary of the United States Department of Homeland Security, with responsibility for the administration of applicable laws and statutes governing immigration and naturalization. He is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of the Department of Homeland Security. More specifically, the Secretary is responsible for the adjudication of EB-5 petitions. He is sued in his official capacity.

9.    Defendant, Ur Jaddou, is the Director of USCIS, and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities. These functions include adjudication of immigrant visa petitions and applications for adjustment of status; adjudication of naturalization petitions; adjudication of asylum and refugee applications; adjudications of I-829 petitions; adjudications performed at the service centers, and all other adjudications performed by the USCIS. She is sued in her official capacity.

10.    Defendant, Alissa Emmel, is the Acting Chief of the USCIS Immigrant Investor Program Office, which is directly charged with responsibility for processing applications and petitions under the EB-5 program, and specifically petitions for alien entrepreneurs. She is sued in his official capacity.

11.     Defendant, U.S. Citizenship and Immigration Services ("USCIS") is an agency of the federal government within the Department of Homeland Security and is responsible for the administration of laws and statutes governing immigration and naturalization.

## JURISDICTION

12.     Jurisdiction in this case is proper under 28 U.S.C. §§1331 and 1361, 5 U.S.C. §701 et. seq., and 28 U.S.C. §2201 et. seq. Relief is requested pursuant to said statutes. Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and under 28 U.S.C. §1361, which provides the district court with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." Further, the Declaratory Judgment Act, 28 U.S.C. §2201, provides that: "[i]n a case of actual controversy within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Review is also warranted and relief sought under the Administrative Procedure Act 5 U.S.C. §701 et seq., § 702, §706(1) and §555(b).

## VENUE

13.     Venue properly lies within the District of Columbia pursuant to 28 U.S.C. §1391(e), in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where a Defendant in the action resides, and where the events and omissions at issue have occurred.

14.     Defendants' Immigrant Investor Program Office, the office charged with adjudicating I-829 petitions, is located at 131 M Street NE, Washington, DC 20529.

## EXHAUSTION OF REMEDIES

3

15.    Plaintiffs have exhausted their administrative remedies. Defendants have foreclosed any ability of Plaintiffs to even inquire into the status of their cases. Plaintiffs have contacted Defendants on several occasions to no avail.

## BACKGROUND ON THE EB-5 PROGRAM

16.    In 1990, Congress amended the Immigration and Nationality Act of 1965, allocating, inter alia, 10,000 immigrant visas per year to foreign nationals seeking Lawful Permanent Resident ("LPR") status on the basis of their capital investments in the United States. See generally the Immigration Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978 (1990) (codified at 8 U.S.C. § 1153(b)(5)). Pursuant to the so-called "Immigrant Investor Program," foreign nationals may be eligible for an employment-based, fifth preference ("EB-5") immigrant visa if they have invested, or are actively in the process of investing, $1 million (or $500,000 in a high unemployment or rural area)[1] in a qualifying New Commercial Enterprise ("NCE"), and that investment results in the creation of at least ten jobs for U.S. Workers. See 8 U.S.C. § 1153(b)(5)(A)-(D); see also 8 C.F.R § 204.6(a)-(j). The EB-5 regulations further provide that, in order to qualify as an "investment" in the EB-5 Program, foreign nationals must actually place their capital "at risk" for the purpose of generating a return, and that the mere intent to invest is not sufficient. See 8 C.F.R. § 204.6(j)(2). The purpose of this program was to promote foreign direct investment into, and job creation within, the U.S.

17.    In 1993, Congress created the Immigrant Investor Pilot Program ("Pilot Program") through the enactment of various provisions of section 610 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriation Act. See Pub. L. No. 102-

---

[1] On March 15, 2022, President Biden signed into law H.R. 2471, which included, among other things, the EB-5 Reform and Integrity Act of 2022. One of the changes this legislation brings is an increase in the investment amount to $1,050,000 (or $800,000 for a high unemployment or rural area). This legislation provides that pre-enactment petitions remain eligible to be approved under the law as it existed at the time of filing.

395, § 601, 106 Stat. 1828, 1874 (1992). The Pilot Program allows foreign investors who invest in NCEs affiliated with USCIS (formerly INS) designated regional centers to meet the 10-jobs-per investor by counting indirect jobs- i.e. jobs that created outside of the NCE. Further, in addition to not being restricted to only counting employees of the NCE, investors under the Pilot Program are allowed to use any valid statistical forecasting model to demonstrate job creation. See § 601(a)-(c) of Pub. L. No. 102-395; *see also* 8 C.F.R. § 204.6(e), (j)(4)(iii), (m)(7)(ii). The intent of these reforms was, again, to incentivize and promote foreign investment into, and job creation within, the U.S.

18.    Regional center investment projects typically use an economic model, such as the RIMS II Input/Output model, a U.S. government created model, for predicting the job creation resulting from EB-5 investment into a given project. Input/Output models are based on multipliers derived from vast amounts of government data. For every unit of input, the multiplier is applied to derive a number of units of output. For instance, most common in the EB-5 program is the use or construction expenditures as an input. For every $1 million of construction expenditures, X number of jobs are created (the multiplier varies by region, but typically there are 10-12 jobs per $1 million of construction expenditures). The ability to count indirect jobs and use an economic model allows EB-5 funds to be used for types of development projects that would not ordinarily qualify under the non-regional center program due to its requirement of counting only employees of the NCE. Another result of the Pilot Program is that regional centers can aggregate investments from a large number of EB-5 investors in order to finance larger scale projects.

19.    In order to become an LPR through both the standard and regional center-model program, a foreign national must initially file with USCIS a Form I-526, Immigrant Petition by Alien Entrepreneur, which, if approved, makes the foreign national eligible to receive an employment-based, fifth preference immigrant visa, see generally 8 U.S.C. § 1153(b)(5). Upon

approval of the I-526 Petition, the foreign national must file a Form I-485, Application to Adjust Status (if he or she is located in the United States), or a Form DS-260, Application for Immigrant Visa and Alien Registration (if he or she is located outside the United States). *See generally* 8 U.S.C. § 1201 (provisions relating to the issuance of entry documents); 8 U.S.C. § 1255 (provisions relating to adjustment of status). Upon adjustment of status or admission on an EB-5 immigrant visa, the foreign national is granted two-years of conditional permanent resident status, provided that the foreign national is not otherwise ineligible for admission into the United States. *See generally* 8 U.S.C. § 1182 (provisions relating to excludable aliens). Finally, at the conclusion of the two-year conditional period, the foreign national must file a Form I-829, Petition to Remove the Conditions on his or her LPR status. If the foreign national has fulfilled the EB-5 requirements- i.e. has invested, maintained the investment at risk, and the investment has resulted in the creation of at least ten jobs for U.S workers- then the conditions will be removed and the foreign national will be an unconditional LPR. *See generally* 8 U.S.C. § 1186b (provisions relating to conditional permanent resident status for certain alien entrepreneurs, spouses, and children).

20.    8 U.S.C. § 1186b(c)(3)(A) provides that Defendants "shall make a determination, within 90 days of the date of such filing or interview (whichever is later), as to whether the facts and information described subsection (d)(1) and alleged in the petition are true with respect to the qualifying commercial enterprise."

21.    8 U.S.C. § 1186b(d)(3) provides a 90 day window deadline to conduct the interview after the petition is filed.

22.    Note that the EB-5 Reform and Integrity Act of 2022 gave the Secretary of Homeland Security discretion to waive the 90 day time frame for interview based on criteria developed by USCIS, in consultation with its Fraud Detection and National Security Directorate and U.S. Immigration and Customs Enforcement, but NOT for investors who "invested in a

regional center, new commercial enterprise, or job-creating entity that was sanctioned under section 1153(b)(5) of [Title 8, U.S. Code]." 8 U.S.C. § 1186b(d)(3)(B)(i).

23.     A regional center, new commercial enterprise, or job-creating entity that was sanctioned under 8 U.S.C. § 1153(b)(5) means a regional center, new commercial enterprise, or job-creating entity that was approved by USCIS prior to the enactment of the statute.

24.     8 C.F.R. § 216.6(c) similarly provides a 90 day time frame for the adjudication of the petition from the date of filing or interview. 8 C.F.R. § 216.6(b)(1) allows USCIS to waive the interview requirement after review of the petition. Together, the regulations contemplate the petition will be adjudicated or an interview scheduled within 90 days of filing.

25.     An EB-5 investor must maintain his or her investment at risk until the end of the conditional residence period. This period does not begin to run until the investor enters the U.S. with an EB-5 visa or is granted an Adjustment of Status by USCIS while in the U.S.

### FACTUAL ALLEGATIONS

**Plaintiff Li**

26.     On August 25, 2014, Plaintiff Li transferred $550,100.00 into W Philadelphia Fund, LLC, which was used to develop and construct a 51-story, 755-room high end, dual-branded luxury hotel located at 1441 Chestnut Street in Philadelphia, Pennsylvania. The project in total raised approximately $218.2 million in EB-5 capital and created approximately 3,505 EB-5 eligible jobs.

27.     Plaintiff Li is a native of China currently residing in the United States. Plaintiff's two-year period of conditional residence commenced on April 26, 2019 and concluded on April 25, 2021. Plaintiff filed a Form I-829 petition on February 8, 2021 based on her investment in the above referenced new commercial enterprise. The Form I-829 Petition remains pending nearly three years later.

7

28.    Plaintiff Li has been greatly damaged by the failure of Defendants to act in accordance with their duties under the law and adjudicate her petition.

29.    Plaintiff Li and her family would like to apply for naturalization soon, though are unable to so until their I-829 is adjudicated.

30.    Plaintiff Li and her family have avoided international travel for several years given the inconveniences associated with documenting their conditional permanent residence status.

31.    Plaintiff and her family members received fingerprinting and biometrics collection waiver notices on July 19, 2021 confirming USCIS was able to reuse their previously captured fingerprints and other biometrics and were not required to appear at a USCIS Application Support Center ("ASC") for a biometrics appointment.

**Plaintiff Sawhney**

32.    On September 29, 2017, Plaintiff Sawhney transferred $500,500.00 to A-Squared Domino Opportunity I, LP to develop a 616,000 gross square foot, 17-story mixed-use facility with approximately 522 luxury rental apartments located at 325 Kent Avenue, Brooklyn, New York. The project created more than 2,730 jobs.

33.    Plaintiff Sawhney is an Indian national currently residing in the United States. Plaintiff's two-year period of conditional residence commenced on February 25, 2019, and concluded on February 25, 2021. Plaintiff filed a Form I-829 petition on December 8, 2020, based on his investment. The Form I-829 Petition remains pending nearly three years later.

34.    Plaintiff Sawhney has been greatly damaged by the failure of Defendants to act in accordance with their duties under the law and adjudicate his petition.

35.    Plaintiff is routinely questioned at customs upon return from travel abroad, and almost always placed in secondary inspection at the airport. Additionally, upon his return to the U.S. from international travel, Plaintiff has faced significant delays in boarding flights as airport

and airline personnel are not familiar with travel on I-829 receipt notices with an expired green card.

36.    Plaintiff Sawhney would like to sponsor his aging parents for lawful permanent residency. He is unable to do so until he is a US citizen. He cannot seek US citizenship through naturalization until his I-829 is adjudicated.

37.    Plaintiff Sawhney's inability to acquire US citizenship also harms his job prospects and career advancement given that he is unable to accept international assignments and/or jobs with the US government.

38.    Plaintiff Sawhney received fingerprinting and biometrics collection waiver notices on July 19, 2021 confirming USCIS was able to reuse his previously captured fingerprints and other biometrics and was not required to appear at a USCIS ASC for a biometrics appointment.

**Plaintiff Manivasagam**

39.    On July 27, 2018, Plaintiff Manivasagam transferred at least $500,000.00 to Odlum Equestrian Lenders, LLC to provide a loan to Tryon Equestrian Partners, LLC to fund the development of the Tryon International Equestrian Center, which includes a wide array of lodging options, restaurants, retail centers, golf courses, a spa, a sporting clay complex, an animal import center, a manufacturing complex, and a sports complex.  The project raised $252.96 million and created more than 6,972 jobs.

40.    Plaintiff Manivasagam is an Indian national currently residing in the United States. Plaintiff's two-year period of conditional residence started on March 14, 2019, and concluded on March 13, 2021. Plaintiff filed a Form I-829 on December 22, 2020, based on his investment. The Form I-829 Petition remains pending nearly three years later.

41.    Plaintiff Manivasagam has been greatly damaged by the failure of Defendants to act in accordance with their duties under the law and adjudicate his petition.

42.     Plaintiff's spouse is a specialty physician who would like to lend her services to the U.S. Department of Veterans Affairs. She is unable to do so until she is a US citizen. She cannot naturalize until, amongst other requirements, her I-829 is adjudicated.

43.     Plaintiff's spouse would like to sponsor her aging parents for lawful permanent residency. She is unable to do so until she is a US citizen. She cannot naturalize until, amongst other requirements, her I-829 is adjudicated.

44.     Plaintiff would like to run for city council in Bloomfield township. He is unable to do so until he is a US citizen.

45.     Plaintiff Manivasagam and his family received fingerprinting and biometrics collection waiver notices on July 19, 2021 confirming USCIS was able to reuse his previously captured fingerprints and other biometrics and were not required to appear at a USCIS ASC for a biometrics appointment

**Harms Common to all Plaintiffs**

46.     Plaintiffs face harms arising from the uncertainty of they and their families' immigration statuses, which are exacerbated and prolonged by the ongoing delays in adjudicating their I-829 petitions.

47.     Uncertainty in their immigration statuses is a cause of great stress.

48.     Although Plaintiffs are Lawful Permanent Residents under the law, their actual green cards expired long ago.

49.     As evidence of their Permanent Resident Status for the purposes of working in the U.S. or travelling in and out of the U.S., they are required to use their expired conditional green cards along with an original I-829 petition receipt notice valid for anywhere between 12 to 48 months.

10

50.    If Plaintiffs are out of the country when the validity period of receipt notices expire, they may not be able to get evidence of their Lawful Permanent Resident statuses, and may be unable to return.

51.    Defendants have taken the position that if the I-829 is denied and a notice to appear in removal proceedings is issued (as required by the regulations) while the investor is outside of the U.S., the investor is unable to use the valid I-829 receipt notice to return to the U.S., meaning that even though Plaintiffs have Lawful Permanent Resident Status and entitled by law to travel in and out of the U.S., they face the risk of being shut out if Defendants deny their petitions while they are abroad.

52.    An alien using an expired conditional resident card and an I-829 receipt notice to prove work authorization on Form I-9 must be reverified by the employer at the expiration of the validity period of the I-829 receipt notice. This is not the case with a 10-year green card or an unexpired conditional green card.

53.    Plaintiffs and their families cannot get a REAL ID driver's license with an expired conditional residence card and an I-551 stamp.

54.    They also face complexities and inconvenience in menial, day-to-day interactions with government that people with unexpired cards or unconditional status do not have to face.

55.    Employers, schools, airlines, State motor vehicle departments and even many of Defendants' own employees are unfamiliar with conditional resident status and what to do when the actual card is expired.

56.    The delays in adjudication of the I-829 petition also prejudice the immigration interests of Plaintiffs and their families in various ways.

57.    Defendant USCIS has vacillated in its position regarding whether the I-829 petitions are subject to denial in the event that the investment does not meet USCIS standards for

being sustained "at risk" for the entire period the I-829 is pending. At times, USCIS has stated this to be a requirement; at other times, it has stated that the investment need only be maintained through the two-year conditional residence period.

58.    If Plaintiffs receive a return of investment prior to the approval of their I-829 petition, they risk being denied as a result of a policy change by Defendants.

59.    USCIS has a history of reversing its policy positions without notice or warning in the EB-5 program, resulting in petitions that were approvable for years suddenly becoming un-approvable. The longer the petitions remain pending, the greater the risk that Plaintiffs will suffer from unanticipated changes in Defendants' policy and administration of the program.

60.    Plaintiffs' investments occurred long ago. The longer their petitions are pending, the harder it becomes to obtain business records in the case that Defendants issue a request for evidence. If Plaintiffs are unable to produce documents in response to a request for evidence, they risk having their petitions denied and losing their green cards.

61.    Although this situation is created by Defendants' delays, Defendants are typically not sympathetic to the unavailability of records due to the passage of time.

62.    At this point, the banks involved may no longer have records of transactions that occurred years ago. Accounts may have been closed (or the banks themselves may have gone out of business). Statements may be unavailable. If Defendants request such documentation, they are creating a situation where Plaintiffs may be unable to satisfy the request.

63.    The IRS generally requires individuals and businesses to retain documents for no more than 7 years. Defendants have no such limit.

64.    Although USCIS policy generally requires adjudicators to give deference to prior adjudications relating to this petition, including Plaintiffs' I-526 petition and the approval of the project related portions of other I-526 and I-829 petitions for investors in their respective projects,

and the I-924 exemplar application that was approved for the projects in question, Defendants are increasingly failing to do so.

65.     Defendants have recently denied a number of I-829 petitions based on a finding that the investor's source of funds- which was approved by Defendants at the I-526 stage- was not from a lawful source.

66.     The longer the petitions remain pending, the greater the risk that Defendants find something about the prior approvals- either Plaintiffs' individual approvals, or the project approvals- to disagree with and reverse, potentially taking away Plaintiffs' green cards after many years based on the re-adjudication of facts that were previously approved.

**Lackluster Processing Times**

67.     By regulation, USCIS is required to adjudicate plaintiffs' I-829 petitions within 90 days pursuant to 8 C.F.R. § 216.6 (c). This 90-day time frame is also specified in the statute.

68.     Defendants' failure to follow this regulatory requirement, and to delay adjudications, not just beyond 90 days but for many years, severely prejudices both the financial interests and the immigration interests of Plaintiffs.

69.     According to 8 U.S.C. §1571(b), "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application.

70.     The 90-day period specified in the I-829 statute and regulations is considerably shorter than this time frame.

71.     Defendant USCIS' actions and inactions are consistent with changes made to its mission statement deleting reference to foreign nationals filing petitions as "customers" (even though they are fee paying customers), eliminating "granting immigration and citizenship

benefits" from the mission statement and eliminating reference to the U.S. as a "nation of immigrants."[2]

72.    Upon information and belief, Defendant USCIS' delays in processing Plaintiffs' petitions is part of an overall effort on the part of Defendants to delay processing times for immigrants seeking benefits. This is consistent with the fact that Defendants' overall average case processing times increased by 46% over the past two fiscal years. Case processing times increased substantially during the last fiscal year even as case receipt volume markedly decreased.

73.    Defendant USCIS' "net backlog" of all case types now exceeds 2.3 million delayed cases, which amounts to more than a 100% increase over the span of one year despite a mere 4% increase in case receipts during that period.

74.    Defendant USCIS has erected barriers to prevent investors from communicating with the agency regarding the status of their petitions unless their petitions have been pending more than 66 months for I-829 petitions.

75.    Defendants have claimed to be processing cases first-in-first-out, but neither the data nor experience support this claim.

76.    USCIS claims that 50% of pending I-829 petitions are pending 34 months or less. https://egov.uscis.gov/processing-times/ (I-829, Immigrant Investor Program Office, last visited August 26, 2023).[3]

77.    On information and belief, USCIS does not collect case completion rates, average processing times or other performance metrics for I-829 petitions.

78.    Defendants simply cannot be processing cases on a first-in-first-out basis.

---

[2] In recognition of this, the mission statement has recently been amended again by the current administration.
[3] USCIS has apparently changed its processing time methodology, and now indicates that 80% of cases are processed within 67 months.

79.     On information and belief, Defendants have intentionally slow-walked all EB-5 related applications and petitions for the last several years.

80.     In FY 2018, USCIS processed approximately 3,385 I-829 petitions. In 2019, it processed 3,853. In FY 2020- at the height of the pandemic, when Defendants have claimed in other cases that their case processing was substantially impacted- it processed 3,241. In FY 2021, the number inexplicably dropped to 2,224. In FY 2022, it declined even further to 1,621. In the first quarter of FY 2023, Defendants processed a mere 336 I-829 petitions (for an annualized rate of approximately 1,300, or one-third of the FY 2018 rate).

81.     This is notwithstanding the statutory and regulatory requirement that such petitions be processed within 90 days and the ever-increasing I-829 petition backlog.

82.     Ironically, the IPO appears to have a greater number of employees today than it did in FY2018 when it processed three-times the number of petitions per year than it is currently processing.

83.     Notably, the EB-5 regional center program lapsed on June 30, 2021. USCIS took the position that it could not adjudicate the tens of thousands of regional center I-526 petitions.

84.     Despite having a large staff trained in EB-5 that could no longer work on I-526 petitions, it appears the IPO did **not** reassign those adjudicators to I-829 petitions, as adjudications of I-829 petitions went down instead of up.

85.     USCIS is primarily a fee supported, and not appropriations supported agency.

86.     On information and belief, USCIS, through DHS, is permitted to set filing fees for the applications and petitions it adjudicates, including I-829 and petitions.

87.     On May 4, 2016, USCIS (through DHS) issued a Notice of Proposed Rulemaking (NPRM), in which it proposed fee increases for almost all types of benefits applications and petitions it adjudicates. That NPRM suggests that USCIS is using EB-5 filing fees to pay for other,

non-EB-5 adjudications instead of using EB-5 filing fees to process EB-5 application and petitions in a timely fashion. *See* 81 Fed. Reg. No. 86. at 26904, et seq.

88.    In the NPRM, USCIS states that the average number of employee hours it takes to process an I-829 petition is only 5.5 hours.

89.    The bulk of that time is spent verifying the job creation and whether the investment project was completed according to plan.

90.    On information and belief, that has been done already as to the projects implicated herein.

91.    IPO Policy requires it to conduct a site visit of a project before approving I-829 petitions.

92.    On information and belief, the site visits in this matter have been completed.

93.    On information and belief, the Immigrant Investor Program Office has the authority to hire personnel at rates outside of the normal GS scale in order to attract candidates with the specialized business and economic knowledge and experience that is relevant to EB-5 adjudications.

94.    On information and belief, USCIS, through DHS, has the ability to set fees at a level necessary to ensure sufficient resources to hire enough staff to process EB-5 applications and petitions in a timely manner.

95.    The filing fee for a Form I-829 petition is currently $3,750. On information and belief, it is the second most expensive filing fee for a single petition charged by USCIS.

96.    On information and belief, USCIS generated more than $50 million of EB-5 fee revenue in 2017 and $40 million in 2018. In FY 2021, it generated $16,936,520 (based on USCIS data of forms I-526, I-829, I-924, and I-924A received in FY 2021 multiplied times $3,675 for I-

16

526 petitions, $3,750 for I-829 petitions, $17,795 for I-924 petitions, and $3,035 for I-924A petitions).

97.    Despite massive EB-5 fee revenues and decreasing EB-5 case receipts, EB-5 processing times have inexplicably, dramatically, and consistently increased.

98.    USCIS posted processing time for I-829 petitions has increased by more than 209% from 2015.

99.    Defendants have indicated that they have no intention of complying with the statutory or regulatory time frames by issuing I-829 receipt notices that currently extend the green card for four years (or 16 times the 90-day time frame in which they are supposed to act).

100.    For many years, the receipt notices extended the green card for one year.

101.    In June 2018, USCIS extended it to 18 months.

102.    In December 2021, after the regional center program lapsed and adjudicators stopped working on regional center I-526 petitions, that was extended to two years.

103.    On January 23, 2023, rather than process I-829 petitions at a reasonable and responsible rate, Defendants simply extended the validity period of the receipt to four years.

104.    Indeed, the increase in receipt notice validity appears to be a good indicator of how many petitions USCIS intends to adjudicate. In FY 2018, it was 18 months, which is roughly a third of 4 years. USCIS is currently processing roughly a third of the number of petitions it was in FY 2018.

105.    Following each increase in receipt notice validity, the processing time has increased and the number of petitions processed has decreased.

106.    This suggests that the increase in receipt validity- and processing times- is planned, not reactionary.

107.    Plaintiffs have followed all filing procedures and have submitted a complete petition.

108.    On information and belief, Plaintiffs are, and have been since the time of filing, eligible to have their petitions approved.

## CLAIMS

109.    Plaintiffs reiterate the allegations set forth in Paragraphs 1-108 as if fully set forth herein.

110.    Defendants' refusal to act in this case is, as a matter of law, arbitrary and not in accordance with the law. Defendants willfully, and unreasonably, have delayed in and have refused to, adjudicate Plaintiffs' petitions, thereby depriving them of their rights to a decision on their statuses and the peace of mind to which they are entitled.

111.    Defendants have violated the statutory and regulatory timeframe of 90 days.

112.    Defendants have likely consciously and intentionally done so as part of a larger practice of ignoring these deadlines.

113.    Defendants have exceeded the statutory and regulatory timeframe for adjudicating Plaintiffs' petition by many multiples.

114.    Plaintiffs have fully complied with all applicable laws, regulations, and procedures, and have provided Defendants with all information and documents required or requested in conjunction with their petitions.

115.    Defendants' delay in adjudicating Plaintiffs' I-829 petitions is unreasonable and unjustified.

116.    USCIS has the ability to generate fee income and allocate sufficient resources to meet its own case processing goals in the time frame specified by Congress for the adjudication of immigrant benefits, but Defendants continue to unreasonably fail to do so.

117.     Regardless of resources, Defendants' failure to adjudicate Plaintiffs' petitions within the statutory and regulatory timeframe is unreasonable.

118.     The EB-5 program was intended by Congress to stimulate job creation in the U.S., and USCIS' failure to adjudicate EB-5 petitions within the time frame specified by Congress and the goals stated by the agency itself frustrates the goals of the program, and makes the delay in the adjudications of Plaintiffs' petitions even more unreasonable.

119.     USCIS has offered no reason for the delay, and has not indicated a time frame in which a response can be expected, and has precluded Plaintiffs from even making an inquiry on their petition by requiring their petition to be pending "well outside" of the 67 month processing time currently listed on the USCIS website, all of which undermine confidence Defendants' intent to adjudicate the petitions within a reasonable time, absent court intervention.

120.     Plaintiffs have been greatly damaged by the failure of Defendants to act in accordance with their duties under the law and adjudicate their petitions as follows:

  a.  Plaintiffs have been damaged in that they face ongoing uncertainty about their futures, which hinders their abilities to make career, family, and life choices, and deprives them of the peace of mind of knowing where their futures will be.

  b.  Plaintiffs have been damaged in that Plaintiffs must repeatedly go to a local USCIS field office to receive documentation as to their status for travel, employment, identification, and other purposes in the form of an I-551 stamp. This is exacerbated by recent government shutdowns and the lack of available InfoPass appointments at local USCIS field offices, which are necessary in order to obtain the I-551 stamp.

  c.  Plaintiffs face repeated delays and hassles when traveling, seeking a driver's license, etc., because of the lack of an unexpired permanent resident card.

121.    The harms suffered by Plaintiffs are ongoing, and can be resolved only through the adjudication of their petitions.

122.    Plaintiffs have a statutory right to the adjudication of their petitions pursuant to the INA and governing regulations at 8 C.F.R. § 216.6.

123.    Defendants are required by their own regulations to adjudicate and issue written decisions on Plaintiffs' petitions. *See* 8 C.F.R. § 216.6(c).

124.    Plaintiffs' payment of fees and Defendants' acceptance of those fees for processing Plaintiffs' applications and petitions represents a quid pro quo whereby Defendants are accepting a fee in exchange for providing a service – namely the processing and adjudication of Plaintiffs' applications and petitions.

125.    In the process of adjudicating an I-829 petition, on information and belief, Defendants are required to complete certain security checks. However, on information and belief, none of these should cause a significant delay in adjudication.

126.    According to a report published by one of Defendants' agencies, the FBI name check is concluded within one month for 94% of applicants, and within six months for 99% of applicants. However, according to a recent USCIS press release, the backlog of FBI name checks has been eliminated, and there remain NO cases in which an FBI name check has been pending for more than six months. All other security checks performed in conjunction with Defendants' adjudication of an application or petition generally take less than a month to complete, and some take as little as a day or two. *See* Office of the Inspector General, "A Review of U.S. Citizenship and Immigration Service's Alien Security Checks," November 2005; USCIS Fact Sheet "Immigration Security Checks – How and Why the Process Works," April 25, 2006.

127.    Defendant USCIS is an administrative agency subject to 5 U.S.C. § 555(b), which provides "[w]ith due regard for the convenience and necessity of the parties or their representatives

20

and within a reasonable time, each agency shall proceed to conclude a matter presented to it." (Emphasis added).

128.    Defendants are also required by law to comply with statutory and regulatory timeframes and the failure to do so is unlawful.

129.    Completing security checks and adjudicating I-829 petitions are purely routine and ministerial duties performed on a daily basis by Defendants.

130.    Except under very specific provisions of law that are not applicable here, Defendants lack the legal authority or discretion to abstain from processing applications or petitions for immigration benefits.

131.    Thus, the adjudication of I-829 petitions is clearly subject to the requirements of 5 U.S.C. § 555(b) and the APA generally, and Defendants have a legal duty to complete them within a reasonable time and by the statutory and regulatory time frame.

132.    Because Defendants have a purely ministerial duty under the law to adjudicate Plaintiffs' petitions within a reasonable time, and have utterly failed, or refused, to do so, a Writ of Mandamus is proper to compel Defendants to perform their duty to adjudicate Plaintiffs' applications and petitions to avoid further harm to Plaintiffs.

133.    For the same reasons, relief under the A.P.A. is warranted.

**PRAYER FOR RELIEF**

WHEREFORE, in view of the arguments and authority noted herein, Plaintiffs respectfully pray that the Defendants be cited to appear herein and that, upon due consideration, the Court enter an order:

a.    granting Plaintiffs a Writ of Mandamus and/or an order under the A.P.A. requiring Defendants to adjudicate Plaintiffs' I-829 petitions within 30 days; and

b.    granting such other relief at law and in equity as justice may require.

c.    retaining jurisdiction over this matter to ensure Defendants' compliance with this

Court's order.

Respectfully submitted,

/s/ H. Ronald Klasko

H. Ronald Klasko
**KLASKO IMMIGRATION LAW PARTNERS, LLP**
1601 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 825-8600
Facsimile: (215) 825-8699
Email: rklasko@klaskolaw.com
Email: dlundy@klaskolaw.com

Attorney for Plaintiffs

22